(42 South. 254.)

No. 16,265.

LANPHIER v. F. JOHNSON & SON CO.,
Limited, et al.

(Nov. 12, 1906.)

APPEAL—REVIEW — DAMAGES—PERSONAL IN-
JURIES.

Where, in an action for damages for per-
sonal injuries sustained and suffering endured
through the fault of the defendant, it does not
appear, from the evidence in the record, that
the amount allowed by the jury, and affirmed by
the trial judge, before whom the plaintiff ap-
peared in person, is manifestly inadequate, such
amount will not be increased by this court.

[Ed. Note.—For cases in point, see Cent. Dig.
vol. 3, Appeal and Error, § 4506.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish
of Orleans; Fred. Duvieve King, Judge.

Action by Hilda Foreman Lanphier against
the F. Johnson & Son Company, Limited, and
the New Orleans Railway & Light Company.
Judgment for plaintiff for less than the
amount claimed, and she appeals. Affirmed.

Benjamin Rice Forman, for appellant.
Fenner, Henderson & Fenner, for appellee
F. Johnson & Son Co. Dart & Kernan, for
appellee New Orleans Railway & Light Co.

MONROE, J. Plaintiff brings this suit
for the recovery of damages for personal in-
juries sustained by her in a collision between
a carriage, hired from defendant first above
named, in which she was riding, and a street
car, operated by the other defendant, alleging
that such collision was the result of the con-
current negligence of the driver of the car-
riage and the motoneer of the car; and,
having made an ineffectual attempt to obtain
a new trial, she prosecutes this appeal from
a judgment awarding her, and condemning
the first-named defendant to pay, $800.

Considering the pleadings and the admis-
sions of counsel, the only question to be here
decided is whether the amount allowed is
sufficient to compensate the actual injury

sustained by plaintiff in her person and feel-
ings; the pecuniary loss resulting to her hus-
band, as master of the community, not being
involved in this litigation.

The accident occurred upon the evening of
February 26, 1906, and the case was tried in
the district court June 7th and 11th follow-
ing. It is shown that the carriage, whilst
crossing Prytania street, at the corner of
Erato, was struck by a Prytania street car,
and practically demolished; the occupants
being hurled to the ground, and the plaintiff
"badly shocked" and sustaining some contu-
sions of the face, body, and hip and a lacer-
ated wound upon the inside of one of her
cheeks, resulting from the impact of the
cheek against her teeth, as also a fracture
of one of the bones of her nose. Her attend-
ing physician testifies that she was convales-
cing from a "severe illness, extending over
several years," "that the accident had a bad
effect on her," that she remained badly shak-
en up for several weeks, and that her general
health was impaired. Being asked, "Isn't
it true that this lady has recovered her nor-
mal condition and is better off to-day, phys-
ically, than she was the day of the accident?"
he replied, "I expect her condition, to-day,
is about the same as it was the day of the
accident." Plaintiff, on the other hand, did
not think her condition (on the day of the tri-
al) quite so good as on the day of the acci-
dent; her statement on that subject being:
"Well, I am weaker and thinner than I was."
Further testifying, as to her condition im-
mediately after the accident and subsequent-
ly, she says:

"One eye was closed completely, and this one
was nearly closed, and I was bleeding terribly,
and I didn't know what was the matter with
me at first. I found out afterwards that my
nose was broken, and I had a laceration on
the inside of this cheek, and two of my teeth
broken, and I was terribly sprained in this hip
and leg, and could not walk; had to limp for
the longest—for about six weeks. * * * I
suffered intense pain; nothing worse in my
life. * * * I had one [trained nurse] for

five nights. * * * I was in bed, off and on, a month; but I got up, from time to time, because I hated to stay in bed, because I couldn't eat anything but liquid food, and I could not get my strength back on that account, because I couldn't chew at all without the most intense pain back of my nose."

The foregoing is all we find in the record upon the subject of plaintiff's nose and teeth, and, as may be seen, the real extent of the injury to those members is left to conjecture, indulging in which, and in the absence of further and more specific complaint, we should infer that the nose has regained its normal proportions and that the injury to the teeth was not irreparable. What at first appeared to us to be a more serious cause of complaint is found in the fact that the healing of the wound on the inside of the cheek produced something in the nature of a scar, the effect of which is said to be perceptible on the outside. We gather from the testimony, however, that this effect, is at worst barely perceptible, and then only when plaintiff turns that side of her face to the light and calls attention to it, and there is nothing in the record to justify the belief that she is disfigured.

Under these circumstances, in view of the testimony of her attending physician to the effect that plaintiff's general condition, upon the day of the trial, was about as good as before the accident, considering that, in determining as to the extent and effect of her injuries, the jury and the judge a quo had the advantage, which we are denied, that plaintiff appeared before them in person, and further considering that, from the evidence in the record, the amount allowed is not manifestly inadequate as compensation for the actual personal injuries and suffering shown by the evidence in the record to have been sustained and endured, we do not feel authorized to disturb the verdict and judgment appealed from; and they are accordingly affirmed, at the cost of the appellant.